UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Northeastern Lumber
Manufacturers Ass.

    v.                                                    Civil No. 09-cv-290-JM

Northern States Pallet
Company, Inc.
and James H. Jackson


**O R D E R**


In this trademark infringement and unfair competition action brought pursuant to 15 U.S.C. § 1051, et seq., plaintiff alleges defendants misappropriated a certification stamp used in the lumber industry to identify wood that has been treated in compliance with certain international inspection standards. Plaintiff Northeastern Lumber Manufacturers Association ("NeLMA") is a trade association that inspects lumber, timber and wood packaging materials to certify that the products comply with these industry standards. NeLMA owns trademarks that cover certification stamps and demonstrate compliance with these standards.  Defendants are a business and its owner who are engaged in the sale, service and removal of wood pallets used in shipping both domestically and overseas.  NeLMA alleges

defendants used its trademark without license or other approval to stamp untreated lumber to misrepresent that it comported with industry safety standards. NeLMA now seeks a preliminary injunction (document no. 12) to prevent defendants from further misappropriation of its trademark or distribution of said improperly certified lumber pallets.

The standard for a preliminary injunction is well-settled.[1] To justify this extraordinary relief, NeLMA must demonstrate that an injunction is needed to prevent irreparable harm and to preserve the status quo, to enable a meaningful disposition of its claims. See <u>CMM Cable Rep. v. Ocean Coast Props.</u>, 48 F.3d 618, 620-21 (1st Cir. 1995) (enjoining certain conduct permits the court "more effectively to remedy discerned wrongs"). Irreparable harm occurs when the challenged conduct causes some harm that cannot be adequately redressed with traditional legal

---

[1] To carry this burden, NeLMA must demonstrate: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." <u>Esso Standard Oil Co. v. Monroig-Zayas</u>, 445 F.3d 13, 18 (1st Cir. 2006) (internal quote omitted); <u>see</u> <u>also</u> <u>Ross-Simons of Warwick, Inc.</u>, 102 F.3d at 18-19 (explaining the burden of proof for a preliminary injunction).

or equitable remedies following a trial.  See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir. 1996) (finding irreparable harm where legal remedies are inadequate); Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994) (explaining irreparable harm).  Irreparable harm combined with likely success on the merits indicates that the injunction sought is needed.  See id. at 19 ("the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem").  Without a showing of likely success on the merits, however, the remaining factors "become matters of idle curiosity," id., insufficient to carry the weight of this extraordinary relief on their own.  See Esso Standard Oil Co., 445 F.3d at 18 (the "sine qua non . . . is likelihood of success on the merits") (internal quotation omitted)).

NeLMA asserts federal and state statutory claims and common law claims of unfair competition and false advertising, trademark infringement, counterfeiting, false designation of origin, passing off and false advertising, among other deceptive business practices.  In support of its motion, NeLMA proffered testimony and other evidence which demonstrated that defendant James H. Jackson ("Jackson") knowingly misused plaintiff's trademark stamp

without NeLMA's authorization or knowledge.  At the hearing, Jackson testified that in early 2006 a NeLMA certification stamp had been inadvertently left on a trailer of lumber pallets delivered from another company, Index Packaging, Inc. ("Index").  Index is licensed by NeLMA to treat wood packaging materials and then stamp them to certify they are in compliance with governing industry standards,[2] and actually treated defendants' inventory.  Jackson admitted that he knowingly misused the stamp to certify that some of his product had been treated, although it had not been.  He also admitted that he knew it was improper because he was not licensed to use NeLMA's certification stamp, but that he used it anyway as a matter of business expediency.  Jackson testified that he guessed about 40% of his inventory had not been heat-treated but that he had stamped certain untreated inventory

---

[2]Wood, in particular wood from coniferous trees, needs to be heated to eliminate fungi and kill nematodes and other forest-feeding insects that can infect the wood.  See Pl.'s Ex. 9, Aff. of Bruce Lander ("Lander Aff."), ¶¶ 4-5.  Untreated lumber that is shipped overseas creates a risk that foreign forests will be exposed to these harmful insects.  The International Plant Protection Convention ("IPPC") promulgated the International Standard for Photosanitary Measures ("ISPM"), which, among other things, govern how wood is to be treated to prevent the spread of disease caused by these wood-borne insects.  ISPM 15 is at issue here, which requires wood packaging materials to be heated to a preset temperature for a preset period of time to ensure the insects and fungi are eliminated from the wood.  See id. at ¶¶ 6-8.

as needed to fill shipment orders.  He explained that he did not intend to hurt anyone, but simply used the stamp for his own convenience and recognizes now that was a mistake.  He admitted, however, that he hid this practice of falsely stamping untreated inventory from his employees.  Once the practice was discovered, Jackson stated that he stopped misusing NeLMA's stamp and returned it to Invest.

   This evidence shows NeLMA is likely to succeed at least in its false advertising, false origin and passing on, and unfair business practices claims.  Jackson admitted that his conduct put into the stream of commerce wood products that had not been treated and that could have been infected with nematodes or other wood-infecting insects.  That fact was undisputed.  The harm resulting from the distribution of potentially infected wood cannot be redressed adequately with money damages.  The public interest in protecting forests in diverse parts of our country and in foreign countries is obvious.  Both the environmental interests in protecting forests and the business interests in maintaining a viable commodity are protected and advanced by the industry standards Jackson violated.  The harm to defendants in requiring them to stop any and all distribution of their

deceptive product is clearly outweighed by NeLMA's interest in maintaining the integrity of its certification process, reputation and good will in the industry.

Based on the evidence adduced in support of NeLMA's motion, I find that an injunction is necessary to preserve the status quo and enable the meaningful resolution of this action. To that end, the following injunction shall issue immediately:

1. defendants must preserve any and all evidence that relates in any way to the mismarked pallets;

2. all such mismarked pallets must remain in the control of defendants and cannot be shipped into the stream of commerce or otherwise sold;

3. all such mismarked pallets shall be separated from any other products in defendants' control or in the control of any customers or other purchaser of defendants' product and quarantined.

Given the limited number of remaining pallets, a bond is not required.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date:  October 2, 2009

```
cc:   George F. Burns, Esq.
      Dawnangela A. Minton, Esq.
      Jeffrey l. Snow, Esq.
      John M. Edwards, Esq.
```